IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-256-FL

| | |
|---|---|
| IJEOMA NWANKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WALMART STORES, INC.; WALMART STORES EAST, LP; JOHN DOES; JANE DOES; BROSNAN RISK CONSULTANTS, LTD.; BRENT LOVETT; GARNER POLICE DEPARTMENT; JOSEPH BINNS, Retired Chief of Police in his individual and official capacity; ANDRE GUFFEY, Sergeant, in his individual and official capacity; KEVIN PENA, Officer, in his individual and official capacity; and SCOTT KLEIN, Officer, in his individual and official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

This matter is before the court on motion by defendants Walmart Stores, Inc.; Walmart Stores East, LP; and John and Jane Does (collectively, the "Walmart defendants") to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 51). The issues raised have been briefed fully and in this posture are ripe for ruling. For the following reasons, the motion is granted.

**STATEMENT OF THE CASE**

The court recounts case activities pertinent to the issues now under consideration. Plaintiff commenced this action July 1, 2022, with claims arising out of accusations by defendants that plaintiff had shoplifted from a Walmart location and conduct resulting. Plaintiff names as

defendants the Walmart defendants; Brosnan Consultants, Ltd. ("Brosnan"), alleged to have provided security services at the Walmart location; and Brent Lovett ("Lovett"), a Brosnan security guard. Plaintiff also names the Garner Police Department ("GPD") and retired chief of police Joseph Binns, as well as officers who arrived on the scene of the incident in question: sergeant Andre Guffey ("Guffey"); officer Kevin Pena ("Pena"); and officer Scott Klein ("Klein"). All officers are named in their individual and official capacities.

In the instant motion, Walmart defendants move to dismiss all claims against them, comprising discrimination in violation of 42 U.S.C. § 1981 ("first claim"); conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3) ("second claim"); false arrest in violation of 42 U.S.C. § 1983 ("third claim"); negligent hiring ("fourteenth claim"); negligent supervision ("fifteenth claim"); and punitive damages as a claim for relief.[1]

The parties' scheduling conference activities, and deadline for provision of a joint report and plan, are stayed pending decision on the instant motion.

### STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Plaintiff is a "black female nurse who has dedicated nearly [15] years to providing custodial healthcare services to the residents of Raleigh, North Carolina." (Compl. (DE 1) ¶ 35). She is also a "successful restauranteur, who has owned and operated the much-beloved Mobile Kitchen" for more than five years. (Id. ¶ 36). In both a personal and professional capacity plaintiff was a regular patron of the "Walmart Supercenter" located at 4500 Fayetteville Road, Raleigh, NC 27603 (hereinafter, the "Walmart Supercenter"), and on May 5, 2020, she was shopping at the location for items for her

---

[1] Plaintiff consented to withdrawal of her claims for assault and battery ("thirteenth claim") and respondeat superior ("seventeenth claim") against Walmart defendants in her response in opposition. (Pl. Resp. (DE 54) at 15). Those claims remain against all other named defendants.

2

restaurant. (Id. ¶¶ 37, 39). After making her purchases, she exited the Walmart Supercenter, entered her parked motor vehicle, and prepared to leave the premises. (Id. ¶¶ 40-42).

As she was about to depart, a Walmart employee named Jose Castillo ("Castillo") "dashed out" of the Walmart Supercenter, gesticulated "wildly" towards plaintiff's vehicle, and yelled "with an ear-piercing roar, at the top of his lungs" that plaintiff "just stole a bunch of items." (Id. ¶¶ 44, 46). Castillo repeated the accusation numerous times, prompting other patrons to stare and causing plaintiff "to experience immediate, considerable alarm." (Id. ¶¶ 45, 47-49).

In response to Castillo's allegation, two Brosnan security guards, including Lovett, approached plaintiff's vehicle. (Id. ¶ 50). The guards accused plaintiff of stealing a large quantity of "canned hand sanitizer" from the Walmart Supercenter. (Id. ¶¶ 51, 53). Plaintiff responded that she had not stolen anything from the store and the security guards directed plaintiff to produce evidence of purchase. (Id. ¶¶ 58-60, 62). Plaintiff, "frustrated" with the "unwarranted detention" and "eager to be on her way," invited the guards to instead consult footage from "the multitude" of cameras located in the Walmart Supercenter. (Id. ¶ 83). The security guards refused to review the potentially exculpatory footage, which plaintiff alleges was in contravention of Brosnan's philosophy, providing "Data is critical. Professionalism is paramount." (Id. ¶¶ 72, 74, 80, 84).

At some point thereafter, GPD officers, including Pena, arrived on the scene, having been called by "Walmart personnel." (Id. ¶¶ 2, 87). Upon the GPD officers' arrival, plaintiff still occupied the driver's seat of her car. (Id. ¶ 90). Pena warned plaintiff, with her vehicle "surrounded by a swarm of armed officers," to "get out [voluntarily], or I'll take you out [forcibly]." (Id. ¶¶ 90, 107 (alterations in original)). Plaintiff feared for her safety and expressed as much to the officers. (Id. ¶ 108).

3

Without plaintiff's consent, Pena reached into plaintiff's vehicle and removed her keys. (Id. ¶¶ 112-13). Plaintiff requested the presence of a GPD supervisor, and Pena responded, in violation of policy, "no supervisor's coming." (Id. ¶¶ 116-18). Pena then "pressed his face against the driver's side window of Plaintiff's car and peered inside." (Id. ¶ 120). Pena identified "yellow tops" and, again without plaintiff's consent, opened the car door and conducted a search of the vehicle. (Id. ¶¶ 121-22, 126). Though the search yielded no hand sanitizer, Pena nevertheless instructed plaintiff to "get out of the vehicle" of her "own free will" or otherwise risk Pena "using handcuffs." (Id. ¶¶ 130-31).

"Plaintiff, in fear for her safety, attempted to duly comply with [Pena's] command." (Id. ¶ 135). "However, in the midst of attempting to comply with officer Pena's orders, Pena reached into the car and, with excessive and unreasonable force, grabbed hold of Plaintiff's body and began violently yanking her out of the driver's seat of the car." (Id. ¶ 136). "At the same time, officer Klein, unreasonably and with excessive force, reached in through the passenger side of Plaintiff's car, and began violently shoving Plaintiff out of the driver's seat of the car." (Id. ¶ 137). As a result, plaintiff fell face-first onto the concrete of the Walmart Supercenter parking lot. (Id. ¶¶ 138-39).

Pena placed his foot on plaintiff's back and handcuffed her wrists. (Id. ¶¶ 139, 141). Plaintiff, experiencing considerable physical pain, pleaded with Pena to be less forceful. (Id. ¶¶ 142-43). Pena instead placed additional pressure on plaintiff's back and threatened her with imprisonment. (Id. ¶ 144). For the first time since his arrival on the scene, Pena then asked "Walmart and Brosnan employees" if they were certain it was plaintiff who had perpetrated the theft. (Id. ¶ 146). Pena instructed them to inspect the footage captured by the Walmart Supercenter cameras. (Id. ¶ 147). At this point, Klein advised plaintiff she was being "detained for the theft

4

of the butter spray." (Id. ¶ 148). Thereafter, both Pena and Klein asserted plaintiff had "stolen before, even if she didn't steal this time." (Id. ¶ 156 (emphasis in original)).

The "conduct in detaining and arresting Plaintiff was so violent that it piqued the attention and concern of an approaching crowd of onlookers." (Id. ¶ 151). The GPD officers instructed the onlookers to "stay back," assuring them that plaintiff was "ok." (Id. ¶ 152). Plaintiff repeatedly informed the officers that she in fact was in considerable pain. (Id. ¶ 154).

After overhearing someone say that she had stolen items while processing through the self-checkout lane, plaintiff informed the officers that she had in fact been checked out by a cashier and urged defendants to speak with him or her. (Id. ¶¶ 158-61). Klein acceded and went into the Walmart Supercenter to speak with said cashier, who confirmed plaintiff had indeed paid for all her items, including the butter spray. (Id. ¶¶ 162, 164). During the time in which Klein verified the purchases, Pena kept his foot on plaintiff's back and her wrists in handcuffs. (Id. ¶ 163). Klein returned and informed Pena that plaintiff had not stolen from the Walmart Supercenter. (Id. ¶ 164). "Walmart, Brosnan and John and Jane Doe(s) employees and security officers" returned from having viewed the footage from the security cameras and confirmed the same. (Id. ¶ 165).

Guffey then arrive on the scene and instructed Pena "[GPD] protocol dictates that we take the person back in and let loss prevention do their thing." (Id. ¶ 166 (alteration in original)). During the ensuing discussion, Pena explained that he wanted to "arrest [plaintiff] anyway, or I'll look bad." (Id. ¶ 169 (alteration in original)). Guffey approved the arrest "in spite of his knowledge that it was improper." (Id. ¶ 170). The officers requested an ambulance for plaintiff, providing in their request that plaintiff was an "emotionally disturbed person in need of mental health care." (Id. ¶¶ 173, 176). Plaintiff alleges the request was a pretense, "misrepresenting Plaintiff's mental and physical demeanor" to cover the officers' misconduct. (Id. ¶ 175). The

5

responding emergency medical services attempted to inject plaintiff with sedatives, including 10 mg of Midazolam, a dosage "well above the average 2 mg dosage and a potentially lethal dose for [plaintiff]." (Id. ¶¶ 178-79).

Additional allegations relevant to the instant motion will be set forth in the analysis herein.

## COURT'S DISCUSSION

A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[2] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.    Analysis

    1.    First Claim

Plaintiff alleges Walmart defendants "enforced a purposefully discriminatory pattern and practice of depriving Black, African-American and other minority individuals of the equal rights" in violation of "applicable paragraphs of 42 U.S. Code § 1981." (Compl. ¶¶ 192, 196).

Section 1981 protects a panoply of individual rights, declaring that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

---

[2]    Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

> evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To state a claim under 42 U.S.C. § 1981, plaintiff must plead that she was deprived of one of the rights enumerated by the section and "but for race, [she] would not have suffered the loss of [that] legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).

Plaintiff here does not identify what right defendants deprived her of, beyond alluding generally to the provisions of § 1981. In addition, she has not adequately pleaded that race was a but-for cause of any injury attributable to Walmart defendants.

As a preliminary step in this analysis, the court must determine the conduct that is in fact alleged to have been committed by Walmart defendants, where plaintiff's allegations often conflate Walmart defendants and Brosnan. Plaintiff in her complaint identifies Walmart Stores, Inc. and Walmart Stores East, LP as a Delaware corporation and partnership respectively with principal places of business in Arkansas. (Compl. (DE 1) ¶¶ 13-14). In the caption of her complaint, she describes the names Jane and John Does as "fictitious and intended to represent individual employees, staff, personnel, agents and/or servants of Walmart Stores, Inc. and/or Walmart Stores East, LP." Brosnan is identified as a separate entity, a New York corporation with a principal place of business in New York, and is alleged to have provided Walmart Stores, Inc. and Walmart Stores East, LP with security services at the Walmart Supercenter. (Id. ¶¶ 19-20). Lovett is described as an "officer from Brosnan," and, together with another unnamed officer, is identified in the complaint with the shorthand "Brosnan officers." (Id. ¶¶ 50-51).

Elsewhere in the complaint, however, Lovett is identified together with Jane and John Does as "employees, staff, personnel, servants and/or agents of Walmart" and given the shorthand

7

"Walmart officers" and "Walmart security." (Id. ¶ 23). Similarly, after describing Lovett and another unnamed Brosnan officer's refusal to consult video footage at plaintiff's request, plaintiff alleges she was "detained" and "in detaining Plaintiff, the said Brosnan officers were engaged in the regular course of and within the scope of their employment for Walmart and Brosnan." (Id. ¶ 82 (emphasis added); see also id. ¶ 146 (alleging Pena asked "Walmart and Brosnan employees" collectively if they were certain it was plaintiff who had perpetrated the theft); id. ¶ 165 (alleging "Walmart, Brosnan and John and Jane Doe(s) employees and security officers" collectively returned from having viewed the footage from the security cameras)). Adding to the ambiguity, at other times Lovett and "uniformed unknown John and Jane Doe(s)" are referenced together with the GPD officers, for instance described with Pena as forming part of "a swarm of armed officers." (See, e.g., id. ¶ 107 (emphasis added)).

The Walmart defendants and Brosnan are separate parties to the complaint. The Supreme Court has indicated that in order to impose liability on a defendant under § 1981 for the discriminatory actions of another, the plaintiff must demonstrate that there is an agency relationship between the defendant and that other party. See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 392-93 (1982) ("Even if the doctrine of respondeat superior were broadly applicable to suits based on § 1981, therefore, it would not support the imposition of liability on a defendant based on the acts of a party with whom it had no agency or employment relationship."); Arguello v. Conoco, Inc., 207 F.3d 803, 807 (5th Cir. 2000) (citing Arguello for the same). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Id. at 392. Plaintiff here has not alleged that there was consent between Brosnan and the Walmart defendants that Brosnan and its employees would act on behalf of

8

Walmart and subject to Walmart's control. Accordingly, on the facts alleged, the Walmart defendants cannot be found liable for the conduct of Brosnan security officers.

The only conduct alleged to have been committed by Walmart defendants is Castillo dashing out of the store and yelling that plaintiff had stolen items and a call by unidentified "Walmart personnel" to GPD, reporting the suspected theft. (Compl. (DE 1) ¶¶ 2, 44-49). Plaintiff alleges this conduct is consistent with a pattern and practice by Walmart defendants of discriminating against people of color, citing in support articles describing allegations of discriminatory conduct by Walmart employees in other stores located in Texas, Georgia, and California. (Id. ¶ 181). Plaintiff also alleges generally that Walmart defendants do not treat white shoppers in a manner comparable to the way she was treated. (See, e.g., id. ¶¶ 61, 101). These "bare assertions devoid of further factual enhancement" are insufficient to support the conclusion that race was a but-for cause of the Walmart defendants' conduct in the instant case. Nemet Chevrolet, Ltd., 591 F.3d at 255; see A Soc'y Without A Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) ("Facts pled that are merely consistent with liability are not sufficient.").

Plaintiff's first claim against Walmart Stores, Inc. and Walmart Stores East, LP is accordingly dismissed.

2. Second Claim

Plaintiff alleges Walmart defendants and Brosnan are liable for conspiracy to racially discriminate against her in violation of 42 U.S.C. § 1985(3).

To state such a claim under 42 U.S.C. § 1985(3), a plaintiff must prove:

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Plaintiff also must show "an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." Id. at 1377. "[P]laintiff must plead facts amounting to more than parallel conduct and a bare assertion of conspiracy. . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." A Soc'y Without A Name, 655 F.3d at 346. "The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." Id.

Plaintiff here claims that Walmart defendants and Brosnan "conspired to deprive Black people, African-Americans and other people of color of the same privileges and immunities afforded to nonethnic minorities." (Compl. (DE 1) ¶ 95). This claim fails for the same reason plaintiff's claim against Walmart defendants under § 1981 fails—plaintiff has not alleged facts supporting the conclusion that Walmart defendants were motivated by discriminatory animus. In addition, and in the alternative, plaintiff's claim fails because she has not plausibly alleged "concrete supporting facts" suggesting a meeting of the minds between Walmart defendants and Brosnan to deprive plaintiff of her constitutional rights. Simmons, 47 F.3d at 1377 ("[W]e have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."); see, e.g., A Soc'y Without A Name, 655 F.3d at 347 (holding allegations were insufficient to support a meeting of the minds where the plaintiff "failed to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made").


10

Case 5:22-cv-00256-FL   Document 56   Filed 05/12/23   Page 10 of 13

Plaintiff's second claim against Walmart defendants is dismissed. Additionally, where plaintiff must prove conspiracy between two or more people to support a claim under § 1985(3), and Brosnan is the only other defendant named, plaintiff's second claim is dismissed in its entirety.

3. Third Claim

Plaintiff alleges that Walmart defendants are liable for false arrest in violation of 42 U.S.C. § 1983.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C.A. § 1983. "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001).

Conduct by Walmart defendants is "merely private conduct," id., and plaintiff has not alleged that there was "so much coercion or encouragement" between the Walmart defendants and GPD such that Walmart defendants and "the government [were] so intertwined that the private conduct can be considered state action for constitutional purposes." DeBauche v. Trani, 191 F.3d 499, 510 (4th Cir. 1999); see Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991) ("Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints.").

Plaintiff's third claim is dismissed against Walmart defendants. Id.

### 4. Fourteenth and Fifteenth Claims

Plaintiff claims in her complaint that Walmart defendants are liable for negligent hiring and negligent supervision. In her response in opposition, she clarifies that her claims are for negligent hiring, supervision, and retention. Plaintiff does not cite case law supporting the existence of the tort of "negligent hiring," and the court is aware of none. Plaintiff's fourteenth and fifteenth claims are accordingly treated as claims for negligent supervision and retention, respectively.

A claim for negligent supervision and retention is "entirely independent of the employer's liability under the doctrine of respondeat superior." Braswell v. Braswell, 330 N.C. 363, 373 (1991). To state a claim, plaintiffs must allege:

> (1) the specific negligent act on which the action is founded . . . [;] (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; [ ] (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in 'oversight and supervision,' . . . ; and (4) that the injury complained of resulted from the incompetency proved.

Medlin v. Bass, 327 N.C. 587, 590-91 (1990). "An essential element of a claim for negligent retention of an employee is that the employee committed a tortious act resulting in plaintiffs' injuries." Waddle v. Sparks, 331 N.C. 73, 87 (1992).

Plaintiff alleges in her complaint that Walmart defendants committed assault and battery. In her response to the instant motion, however, plaintiff consents to withdraw those claims against Walmart defendants. (See Pl. Resp. (DE 54) at 15). Plaintiff has alleged no other tortious act by Walmart defendants. Indeed, as a general matter, plaintiff's claims for negligent supervision and retention suffer from the same error as the claims already discussed—plaintiff's claims are conclusory, contending as a general matter that Walmart defendants "failed to use reasonable care and diligence" without factual enhancement. (See, e.g., Compl. (DE 1) ¶¶ 294, 308).

Plaintiffs fourteenth and fifteenth claims are dismissed against Walmart defendants.

5. Punitive Damages as a Claim for Relief

Plaintiff includes in her prayer for relief a request for punitive damages against all defendants. Without a viable claim against Walmart defendants, plaintiff's claim for punitive damages against them fails. See N.C. Gen. Stat. § 1D-15(a) ("Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damage."); Funderburk v. JPMorgan Chase Bank, N.A., 241 N.C. App. 415, 425 (2015) ("[A] claim for punitive damages is not a stand-alone claim.").

## CONCLUSION

Based on the foregoing, Walmart defendant's motion to dismiss (DE 51) is GRANTED. All claims remain against other named defendants, with the exception of plaintiff's second claim for relief, which is DISMISSED in its entirety.

Where the remaining parties' scheduling activities were previously stayed pursuant to this court's February 27, 2023, order, the court now LIFTS that stay. The parties are DIRECTED to file a discovery plan within **30 days** in compliance with the court's initial scheduling order entered October 21, 2022.

SO ORDERED, this the 12th day of May, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge